**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

Order Filed on March 11, 2020
by Clerk,
U.S. Bankruptcy Court
District of New Jersey

|  |  |
|---|---|
| In re: | : |
|  | : CHAPTER 11 |
| MOUNTAIN CREEK RESORT, INC., *et al.*,[1] | : |
|  | : CASE NO.: 17-19899 (SLM) |
| Debtors. | : |

**OPINION**

**A P P E A R A N C E S:**

Jeffrey D. Prol, Esq.
Jeffrey A. Kramer, Esq.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068
*Attorneys for Debtors, Mountain Creek Resort, Inc., et al.*

Robert E. Nies, Esq.
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, New Jersey 07052
*Attorneys for Sussex County Board of Chosen Freeholders*

---

[1] The last four digits of the Debtors' taxpayer identification numbers in these Chapter 11 cases are as follows: Mountain Creek Resort, Inc. (4557); Mountain Creek Services Inc. (3228); Mountain Creek Management, LLC (1394); Mountain Creek Mountainslide, LLC (1545); Mountain Leasing LLC (6057); and Appalachian Liquors Corporation (9542).

1

Marita S. Erbeck, Esq.
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey 07932
*Attorneys for the Official Committee of Unsecured Creditors*

Diane E. Vuocolo, Esq.
Alan Brody, Esq.
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
*Attorneys for M&T Bank, also known as Manufacturers and Traders Trust Company*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Before the Court is a *Motion for the Entry of an Order Expunging and Disallowing Administrative Expense Request of Sussex County Board of Chosen Freeholders* (the "**Motion to Expunge**"),[2] filed by debtors Mountain Creek Resort, Inc., *et al*., (the "**Debtors**" or "**Mountain Creek**") by and through its counsel, Lowenstein Sandler, LLP, in response to the administrative expense claim at claim number 173 filed by Sussex County Board of Chosen Freeholders ("**Sussex County**"),[3] by and through its counsel, Chiesa Shahinian & Giantomasi PC. Sussex County filed opposition to the Motion to Expunge.[4] The Debtors filed a reply.[5] The Court heard oral argument on the Motion to Expunge on January 27, 2020. The Court entered an Order Granting the Motion to Expunge on February 24, 2020, indicating that an Opinion would follow setting forth the Court's

---

[2] Docket No. 1115.
[3] Docket No. 1115-1 at Ex. A. Sussex County Board of Chosen Freeholders filed the claim with Prime Clerk, LLC. Therefore, the claim number refers to the Prime Clerk assignment, rather than the Bankruptcy Court's claims register.
[4] Docket No. 1145.
[5] Docket No. 1156.

2

reasoning.[6]

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court for the District of New Jersey dated July 23, 1984 and amended on September 18, 2012. This matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B), as it concerns the administration of the estate, and as it relates to administrative expenses, respectively. Venue is proper in this Court under 28 U.S.C. § 1408. The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND AND PROCEDURAL HISTORY

The parties generally agree on the factual background and procedural history set forth in the Motion to Expunge.[7] Sussex County disagrees solely regarding the Debtors' characterization of Sussex County's efforts in the two objections Sussex County filed to original settlement agreement (the "**Original Settlement Agreement**").[8] This Court relies on the agreed upon facts set forth in the Motion to Expunge. Accordingly, there is no need for the full recitation of these cases' history. The facts that are pertinent to this Court's decision are narrated below.

During the pendency of the bankruptcy cases, the Vernon Parties[9] asserted significant claims against the Debtors, which allegedly arose from the Debtors' obligations under certain sewer agreements. Naturally, the Debtor's disputed the Vernon Parties' contentions. The Debtors' and the Vernon Parties engaged in litigation, which led to Court ordered mediation. After

---

[6] *Order Granting Motion to Expunge Claim of Sussex County Board of Chosen Freeholders* (the "**Order Granting the Motion to Expunge**"), Docket No. 1214.
[7] Docket No. 1145 at fn. 3.
[8] *Id*.
[9] The Vernon parties consist of the Township of Vernon and the Vernon Township Municipal Utilities Authority (the "**Vernon Parties**").

extensive and protracted mediation, the parties reached the Original Settlement Agreement resolving Vernon Parties' claims against Mountain Creek.[10]

The Debtors filed a motion to settle those issues.[11] None of the Debtors' creditors objected. Sussex County—although neither a party to the litigation nor a creditor in the case—objected to the settlement and argued that the terms of the Original Settlement Agreement were contrary to state law.[12] In its objection, Sussex County makes clear that there existed only a "remote possibility" of Sussex County incurring damages if the Court approved the Original Settlement Agreement.[13] Sussex County only incurs liability if: (1) Mountain Creek fails to pay its sewer obligation to Vernon; (2) Vernon *then* defaults on the annual charges due to Sussex County Municipal Utilities Authority ("**SCMUA**"); (3) Vernon's default *then* causes SCMUA to have a deficiency in sewer revenues; and (4) Sussex County *then* honors its guarantee of SCMUA's obligations.[14] Despite the remoteness of Sussex County incurring any liability, Sussex County asserts that it objected to the Original Settlement Agreement because of its concern either that the Debtors would confirm a plan of reorganization that contained an allegedly illegal settlement agreement or that the Debtors would be unable to confirm a plan of reorganization for the same reason.[15]

The parties went back to mediation to address Sussex County's objection to the Original Settlement Agreement and the concerns raised by the State of New Jersey. Again, the Debtors and the Vernon Parties reached a settlement to which Sussex County blessed, resolving the outstanding issues (the "**Revised Settlement Agreement**"). A number of the provisions changed in the

---

[10] The Honorable Michael B. Kaplan, U.S.B.J., mediated the dispute and assisted the parties in reaching the resolution memorialized in the Original Settlement Agreement.
[11] Docket No. 777.
[12] Docket Nos. 805 and 810.
[13] Docket No. 1145-1 at paragraph 8.
[14] *Id.*; Docket No. 1145 at paragraph 37; Docket No. 1115 at paragraph 31.
[15] Docket No. 1145-1 at paragraph 8.

4

Revised Settlement Agreement were the same provisions objected to by Sussex County. Sussex County argues that it made a substantial contribution to the Debtors' cases because its objection to the Original Settlement Agreement caused the Debtors to make certain modifications to the proposed settlement. The Debtors argue, however, that addressing Sussex County's objection was time consuming and expensive to the Debtors' estates and created no benefit for the Debtors' estates or their creditors—especially since the Vernon Parties agreed to the Original Settlement Agreement. Ultimately, the Court approved the Revised Settlement Agreement.[16]

Sussex County filed a claim for administrative expenses in the amount of $197,767.95 incurred in connection with its efforts in: (1) objecting to Mountain Creek's Original Settlement agreement; and (2) ensuring that any settlement formulated after its objection was legal and enforceable.[17] Sussex County indicates that the basis for its claim is "[r]eimbursement of legal expenses and costs under 11 U.S.C. [§] 503(b)."[18] Although Sussex County failed to expressly designate a subsection of § 503(b) to support its alleged administrative expense, Sussex County contends that its efforts benefited the Debtors' estate and their creditors in numerous ways.[19] The Debtors filed the Motion to Expunge seeking to expunge and disallow Sussex County's administrative claim.[20] The Debtors argue Sussex County lacks standing to assert an administrative expense claim and Sussex County failed to make a substantial contribution as required by § 503(b)(3)(D).[21] According to the Debtors, the Debtors estate is not required to pay the tab for Sussex County's alleged administrative expenses. The Debtors also argue that Sussex County cannot be reimbursed for its legal fees because nothing in the Bankruptcy Code[22] permits

---

[16] Docket No. 986.
[17] *Id.*
[18] Docket No. 1115-1 at Ex. A.
[19] *Id.*
[20] Docket No. 1115.
[21] *Id.*
[22] Title 11 of the United States Code (the "**Bankruptcy Code**").

5

such reimbursement. Sussex County asserts that all of its actions, litigious or otherwise, were for the betterment of the estate and the public (namely county residents) and, therefore, it may recover its expenses from the Debtors' estate. So, the Court must decide if a so-called "Good Samaritan"—one who is not expressly delineated in § 503(b)(3)(D)—is entitled to an administrative expense under the statute. If so, is the Good Samaritan also entitled to reimbursement of its legal fees under § 503(b)(4)?

The issue presented to the Court in the Motion to Expunge is one of first impression to this Court. Both parties agree that there is no decision from a bankruptcy court or district court in the District of New Jersey, or from the Third Circuit Court of Appeals allowing an administrative claim in favor of a claimant that is not one of the listed entities in § 503(b)(3)(D). Sussex County asserts, however, that this Court should view the enumerated categories as illustrative, focus on the results Sussex County purportedly achieved, find that Sussex County made an extraordinary contribution to these cases, and *then* go back and review the issue of standing in that context. This Court disagrees with Sussex County's approach. Statutory standing must be firmly established as a prerequisite to any recovery permitted under § 503(b)(3)(D). If Sussex County cannot demonstrate that it possesses statutory standing under § 503(b)(3)(D), it is of no consequence as to whether it made any contribution—substantial or otherwise—to the estate.

## **DISCUSSION**

Section 503(b)(4) authorizes reasonable compensation for legal fees "only in situations coming within the scope of § 503(b)(3) . . . ."[23] Specifically, the court is authorized to allow an administrative claim, after notice and a hearing, for reasonable compensation for attorneys' fees incurred by "a creditor, an indenture trustee, an equity security holder, or a committee representing

---

[23] *Lebron v. Mechem. Fin., Inc.,* 27 F.3d 937, 943 (3d Cir. 1994); *See* 11 U.S.C. § 503(b)(4).

6

creditors or equity security holders other than a committee appointed under [§] 1102 of this title" while "making a substantial contribution" to a Chapter 11 case.[24] If an entity has an allowable expense under § 503(b)(3)(D), then the Court may also allow reimbursement for professional fees of that entity under § 503(b)(4). Therefore, this Court will focus first on whether Sussex County meets the requirements of § 503(b)(3)(D).

The Third Circuit's decision in *Lebron v. Mechem Financial Inc.* guides this Court in its analysis of § 503(b)(3)(D). The Third Circuit sets forth twin objectives to consider when scrutinizing claims under § 503(b)(3)(D): (1) encouraging "meaningful *creditor* participation in the reorganization process,"[25] and (2) "keeping fees and administrative expenses at a minimum so as *to preserve as much of the estate as possible for the creditors*."[26]

I.  **SUSSEX COUNTY'S ADMINISTRATIVE EXPENSE CLAIM IS DISALLOWED BECAUSE SUSSEX COUNTY LACKS STANDING UNDER § 503(b)(3)(D)**

The Court's starting point for its analysis is whether Sussex County has standing pursuant to 11 U.S.C. § 503(b)(3)(D). Sussex County urges this Court to first examine the merits of the administrative claim to determine whether Sussex County made a substantial contribution and then examine standing. The Third Circuit, however, reviewed standing first when it analyzed an administrative claim under § 503(b)(3)(D).[27] This Court never reaches the issue of substantial contribution if Sussex County lacks standing. Sussex County's suggestion on how to proceed is backwards and akin to putting the cart before the horse. The cart does not roll without the horse. Likewise, one cannot collect under § 503(b)(3)(D) without standing. Accordingly, Sussex County

---

[24] *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 146 (Bankr. D.N.J. Apr. 12, 2010).
[25] *Lebron*, 27 F.3d at 944 (citing *In re Richton Int'l Corp.*, 15 B.R. 854, 855–56 (Bankr. S.D.N.Y. 1981)) (emphasis added).
[26] *Lebron*, 27 F.3d at 944 (citing *Otte v. U.S.*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974)) (emphasis added).
[27] *See Id.* at 943. This Court notes that standing was not at issue in *Lebron*.

7

must first demonstrate that it has standing under § 503(b)(3)(D). Otherwise, its request for payment must fail.

To establish statutory standing, a party must demonstrate that Congress conferred it certain rights under a statute.[28] "Statutory standing is a *threshold* issue that determines whether a party is properly before the court."[29] Therefore, this Court must analyze whether § 503(b)(3)(D) provides standing for Sussex County to recover its administrative expense claim in the Debtors' cases. Section 503(b)(3)(D) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
> >
> > (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title[.][30]

Therefore, the four categories of entities that may apply for reimbursement of administrative expenses are: (1) creditors; (2) indentured trustees; (3) equity security holders; and (4) creditor and equity holder committees other than official committees appointed under § 1102 of the Bankruptcy Code.[31]

The claimant seeking reimbursement of administrative expenses bears the burden of proof.[32] Here, Sussex County asserts that it has standing as an "indirect creditor", as an "interested

---

[28] *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).
[29] *United States v. $8,221,877.16 in U.S. Currency,* 330 F.3d 141, 150 n.9 (3d Cir. 2003) (emphasis in original).
[30] 11 U.S.C. § 503(b)(3)(D).
[31] *Id*.
[32] *In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012) (citing *In re Columbia Gas Sys. Inc.,* 224 B.R. 540, 548 (Bankr. D. Del. 1998)).

party"/"party-in-interest", and as a result of its direct interest of the Sussex County residents.[33] Specifically, Sussex County states that "[c]ertainly, Sussex County is indirectly a creditor of Debtors - - as taxpayers."[34] Sussex County then asserts that ". . . it is indisputable that Sussex County is a party-in-interest in this case."[35] Lastly, Sussex County argues that it "has a direct interest in preserving the economic health of its residents - - which potentially would have been devastated by approval of the Original Settlement Agreement."[36] None of Sussex County's descriptions fall within the statutory definition of entities entitled to expenses under § 503(b)(3)(D).

Sussex County never asserts that it is an indenture trustee, equity security holder, creditor committee, or equity security holders committee—all categories of entities with standing to seek recovery of expenses under § 503(b)(3)(D). Therefore, the Court need not address those categories.

### A. Sussex County is Not a Creditor

Sussex County attempts to slot itself into § 503(b)(3)(D) by asserting that it is "a contingent, unliquidated and remote creditor."[37]

"Creditor" is expressly defined in the Bankruptcy Code. A creditor is an:

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>
> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
>
> (C) entity that has a community claim.[38]

---

[33] Docket No. 1145 at paragraph 48.
[34] *Id.* at paragraph 48.
[35] *Id.*
[36] *Id.*
[37] *Id.* at paragraph 8.
[38] 11 U.S.C. § 101(10).

Sussex County is not a creditor, nor does it pretend to be one. Yet, it still asserts it possesses standing necessary to recover under § 503(b)(3)(D). Debtors compare this case with another case within the Third Circuit to exemplify that Sussex County lacks standing. In *In re Energy Future Holdings Corp.*, the subsidiary of a creditor filed a claim for reimbursement of administrative expense.[39] The bankruptcy court found that the claimant failed to show that it was a creditor of the debtor and, therefore, it was not entitled to an administrative claim.[40]

Similarly, Sussex County failed to demonstrate that it is a creditor of the Debtors' estate. Sussex County's categorization of its status in relation to the Debtors fails to fit within the definition of creditor in § 101(10). Further, Sussex County never filed a proof of claim in these Chapter 11 cases nor did the Debtors list Sussex County on its schedules as a creditor or an equity security holder. A number of things must go wrong for Sussex County to have any potential liability to SCMUA.[41] But even SCMUA—the party potentially liable to Sussex County—asserts that it "is not a party to this bankruptcy case or the adversary proceeding to which the Revised Settlement Agreement relates, is not a creditor of the Debtors, and has not asserted claims or causes of action against the Debtors or their bankruptcy estates."[42] SCMUA's position is contrary to Sussex County's that it is an alleged indirect creditor through SCMUA. Further, Sussex County cannot establish creditor status through Vernon Township, which is one of Debtors' recognized creditors and may have potential liability to Sussex County. Even if Vernon Township is liable to Sussex County, creditors of creditors generally lack standing to participate in bankruptcy cases.[43]

---

[39] *In re Energy Future Holdings Corp.*, 588 B.R 371, 386 (Bankr. D. Del. 2018).
[40] *Id.* at 388.
[41] As a reminder, as previously discussed, Sussex County admits it would only incur liability if: (1) the debtor Mountain Creek fails to pay its sewer obligation to Vernon; (2) Vernon then defaults on the annual charges due to Sussex County Municipal Utilities Authority; (3) Vernon's default *then* causes SCMUA to have a deficiency in sewer revenues; and (4) Sussex County then honors its guarantee of SCMUA's obligations.
[42] Docket No. 969 at paragraph 1.
[43] *In re Lifeco Inv. Grp., Inc.*, 173 B.R. 478, 487 (Bankr. D. Del. 1994) ("I find no statutory or judicial support to conclude that a creditor of a creditor has standing in a bankruptcy case. Indeed, numerous cases state the contrary.").

Under no scenario has Sussex County demonstrated that it is a creditor. The Bankruptcy Code does not recognize the terms "remote creditor or indirect creditor," nor does this Court. It is that very "remoteness" or "indirectness" that makes it clear that Sussex County is not a creditor in this case.

### B. Section 503(b)(3)(D) is Clear and Unambiguous

Sussex County alternatively argues that it is a party in interest/interested party to the Debtors' bankruptcy cases. Sussex County asserts that it has standing as an interested party because § 503(b)(3)(D) is ambiguous and nonexclusive. Sussex County supports this position by pointing to the term "including" used in subsections (b) and (b)(1) of § 503. It further argues that the Third Circuit's use of the term "interested party" in *Lebron* demonstrated an expansive view on the parties bestowed with standing under the statute.[44] Conversely, the Debtors assert that the statute is plain and unambiguous in listing the four categories of persons who may apply for expense reimbursements under § 503(b)(3). The parties' disagreement requires this Court to examine the statutory construction of § 503(b) as informed by applicable case law.

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon [of statutory construction] is also the last: 'judicial inquiry is complete.'"[45] Therefore, this Court must determine whether § 503(b) is unambiguous.

### 1. Section 503(b)(3)(D)'s Enumeration of the Parties is Exhaustive

#### i. Section 503(b) and § 503(b)(1)'s Use of the Term "Including" Does Not Extend to § 503(b)(3)

Sussex County argues that Congress's use of "including" in § 503(b) and (b)(1) illustrates

---

[44] Docket No. 1145 at paragraph 33; *See Lebron,* 27 F.3d at 944.
[45] *Monzon v. De La Roca*, 910 F.3d 92, 101 (3d Cir. 2018) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations omitted)).

that Congress intended for bankruptcy courts to evaluate the standing of a claimant on a case-by-case basis. Sussex relies on the Sixth Circuit's decision in *In re Connolly*, wherein the court took an expansive approach with what types of expenses could be administrative expense claims under the statute.[46] The *Connolly* court allowed an administrative expense claim under § 503(b)(3)(D) in a Chapter 7 case despite no mention of Chapter 7 in that section.[47] Sussex County encourages the Court to use *Connolly* as a benchmark that § 503(b)(3)(D)—in its entirety—should be read expansively even thought the Sixth Circuit focused on the discrete issue of whether a substantial contribution claim may be allowed in a Chapter 7 case.

The Debtors disagree and contend that Congress would have used the term "including" for § 503(b)(3) if it intended to broaden the parties conferred standing under § 503(b)(3)(D), just like it did under subsections (b) and (b)(1). The Debtors distinguish this case from *Connolly* by highlighting that the *Connolly* court expanded § 503(b) to permit administrative expense claims in a Chapter 7 case rather than just Chapters 9 and 11. The Debtors also contend that *Connolly* did not expand the type of entity allowed to seek reimbursement for administrative expenses—the expansion was limited to the case type. The Debtors assert that the dissent in *Connolly* is particularly instructive because the dissent aligns its position with the Third Circuit's interpretation of § 503(b) in *Lebron* and explains why § 503(b)(3)(D) must be narrowly construed.

This Court finds the dissent in *Connolly* and the *Energy Future Holdings* decision persuasive and is guided by them in adhering to a strict interpretation of the statute. Reaching this decision requires an examination of how the word "including" is utilized in § 503. The Bankruptcy Code clearly states that the use of the words "including" and "includes" is not limiting.[48] Section

---

[46] *In re Connolly N. Am., LLC*, 802 F.3d 810, 816 (6th Cir. 2015).
[47] *Id.* at 816–17.
[48] *See* 11 U.S.C. § 102(3).

503(b) states:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, **including** —
>
> > (1) (A) the actual, necessary costs and expenses of preserving the estate **including**—
> >
> > > (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
> > >
> > > (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;
>
> …
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> (A) a creditor that files a petition under section 303 of this title;
>
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
> (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

13

>   (E) a custodian superseded under section 543 of this title,
>   and compensation for the services of such custodian; or
>
>   (F) a member of a committee appointed under section 1102
>   of this title, if such expenses are incurred in the performance
>   of the duties of such committee;[49]

Sections 503(b) and 503(b)(1) both use the word "including". This Court agrees with the Debtors that Congress's use of the term "including" in subsections (b) and (b)(1) indicates that those specific subsections are not limited. On the other hand, subsection (b)(3)(D) is extremely limited to a list of defined categories. If Congress intended to expand the list of entities delineated in § 503(b)(3)(D), then Congress would have followed the format used for subsections (b) and (b)(1) by inserting the word "including" to that subsection as well. Instead, § 503(b)(3)(D) purposefully limits who may recover. As analyzed below, Congress had multiple opportunities to amend § 503(b)(3)(D) to expand its scope but elected not to do so.

### ii. This Court Lacks Authority to Expand § 503(b)(3)(D) to Include Interested Party or Party in Interest

Next, Sussex County argues that a party in interest/interested party is accorded standing under a broad interpretation of § 503(b)(3)(D). Sussex County argues that the *Lebron* court, although in dicta, uses the term "interested party", thereby expanding the list in § 503(b)(3)(D).[50] Sussex County argues that the Third Circuit's use of "interested party" demonstrates a broad reading of the statutory section. This Court agrees that the Third Circuit's use of "interested party" was dicta. However, this Court disagrees with Sussex County's conclusion that the Third Circuit intended to expand the list of parties entitled to standing. Standing was never an issue in *Lebron*. While standing was not a bone of contention in *Lebron*, it was established prior to the Third Circuit

---

[49] 11 U.S.C. § 503(b) (emphasis added).
[50] *Lebron*, 27 F.3d at 944 ("Most activities of an *interested party* that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement.") (emphasis added).

14

examining whether the claimant made a substantial contribution. The Third Circuit's use of "interested party" should not be interpreted as an expansion of the parties bestowed with standing under the statute. Again, the *Lebron* Court focused on substantial contribution—part two of the analysis.

Notably, the Bankruptcy Code uses the phrase "party in interest" approximately eighty-three times. The Bankruptcy Code uses the phrases "interested party" and "interested parties" approximately fifty-six times. Significantly, § 502, which directly precedes § 503(b), uses the phrase "party in interest." Section 502(a) states, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a *party in interest*, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."[51] If Congress intended to extend standing to a party in interest, it would have used that term in the § 503(b)(3)(D) the same way it did in § 502(a). Ironically, § 503(b) refers to § 502(f), leading this Court to believe that Congress knew that other sections of the Bankruptcy Code provided standing or other rights to parties in interest. Congress simply chose not to incorporate the phrase into § 503(b)(3)(D).[52]

Sussex County also relies on *In re S&Y Enters., LLC* and *In re Frog and Peach, Ltd*. to support its position that the statute is ambiguous.[53] This Court finds that both of these cases are distinguishable from this one. The *S&Y Enterprises* court found the categories of parties in § 503(b)(3)(D) to be illustrative and non-exclusive.[54] In that case, the claimant was an unsuccessful bidder that argued it was entitled to administrative expenses because it caused the

---

[51] 11 U.S.C. § 502(a) (emphasis added).
[52] *See* 11 U.S.C. § 503(b).
[53] *See in re S&Y Enters., LLC,* 480 B.R. 452 (Bankr. E.D.N.Y. 2012); *see also In re Frog and Peach, Ltd.,* 38 B.R. 307 (Bankr. N.D. Georgia 1984).
[54] *S&Y Enterprises*, 480 B.R. at 461.

15

successful bidder to increase its offer for the property sale, which paid for the equity security holders' counsel fees and expenses.[55] The *S&Y Enterprises* court adopted an expansive view of the categories in § 503(b)(3)(D).[56] The court found the claimant possessed standing because of the specific facts in the case.[57] This Court respectfully disagrees that the categories of claimants eligible to recover under § 503(b)(3)(D) should be expanded because such an expansion sets the bar for standing too low and spreads the benefits too wide, which is contrary to the Third Circuit's recognition of the important balance between encouraging valuable creditor participation and keeping administrative expenses low in order to preserve the estate.[58]

In *Frog and Peach*, the bankruptcy court analyzed the standing of an unsuccessful bidder.[59] The court found the applicant failed to meet the statutory requirement for standing.[60] It denied the claimants application for allowance of an administrative expense claim because it found the claimant acted in its own self-interest.[61] The court opined that non-creditor claimants with meritorious contributions may have an allowable administrative claim, but expressed serious concern about opening the floodgates to non-creditor claimants.[62] This Court shares the concern of extending standing those that are not expressly authorized by § 503(b). Although the Court disagrees with the expansive interpretation that the *Frog and Peach* court ultimately adopted, this Court agrees that it "can find no justification for reading between the lines of the statute to permit [the] claim."[63]

---

[55] *Id.* at 461–62.
[56] *Id.*
[57] *Id.*
[58] *Lebron*, 27 F.3d at 944.
[59] *Frog and Peach*, 38 B.R. at 309.
[60] *Id.* at 310.
[61] *Id.*
[62] *Id.* at 308–10.
[63] *Id.* at 310.

16

### iii. The Combination of Legislative History and the Third Circuit's Analysis of § 503(b)(4) Demonstrate that § 503(b)(3)(D) is Unambiguous and Exclusive

In 1994, Congress enacted the Bankruptcy Reform Act, which amended § 503 of the Bankruptcy Code to add a member of a creditors committee as a party authorized to receive reimbursement for administrative expenses incurred.[64] Notably, Congress did not add "party in interest" to the list of parties with standing under § 503(b)(3)(D). If the list was already non-exclusive, it begs the question as to why Congress would amend the list to add an additional enumerated party. Subsequently, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 where it once again reviewed § 503(b) and amended § 503(b)(4). Congress added language to permit "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of [§ 503(b)] . . . ."[65]

In *First Merchants*, the Third Circuit addressed the issue of whether attorneys for a member of the creditors committee could seek reimbursement of legal fees as an administrative claim pursuant to § 503(b)(4).[66] The Third Circuit utilized a straightforward approach to review § 503(b)(3)(F) and § 503(b)(4) in determining the treatment of administrative expenses incurred by a member of a creditors committee.[67] The Third Circuit scrutinized Congress's amendments to § 503(b)(3) and determined that attorney's fees for a member of the creditor's committee may be allowable under § 503(b)(4).[68] Ultimately, the Third Circuit concluded that the language of § 503 is unambiguous and refused to "turn the language upside down and inside out" to find otherwise.[69]

---

[64] *See* 11 U.S.C. § 503(b)(3)(F).
[65] 11 U.S.C. § 503(b)(4).
[66] *First Merch. Acceptance Corp. v. J.C. Bradford & Co.* (*In re First Merchants*), 198 F.3d 394, 395 (3d Cir. 1999).
[67] *Id.* at 398.
[68] *Id.*
[69] *Id.* at 398–99.

The Court finds the legislative history of the statute instructive in demonstrating that Congress only meant to confer standing to the enumerated parties listed in the statute. In light of the legislative history and the Third Circuit's decisions in *Lebron* and *First Merchants*, the Court concludes that a party in interest is not eligible to receive an administrative expense under § 503(b)(3)(D).

### 2. **Sussex County's Attorneys Cannot Receive Reimbursement Under § 503(b)(4) Because Sussex County Lacks Standing Under § 503(b)(3)(D)**

After analyzing both the statutory construction and legislative history, this Court holds that the list of enumerated parties under § 503(b)(3)(D) is exhaustive and unambiguous. Therefore, "judicial inquiry is complete."[70] Sussex County lacks standing required to receive payment for an administrative expense claim under § 503(b)(3)(D). Since Sussex County cannot recover an administrative claim, its legal fees are not recoverable under § 503(b)(4).

## II. THE COURT WILL NOT ADJUDICATE THE ISSUE OF WHETHER SUSSEX COUNTY MADE A SUBSTANTIAL CONTRIBUTION

The Court already decided that Sussex County lacks standing to assert an administrative expense claim pursuant to § 503(b)(3)(D). Therefore, the Court need not address whether Sussex County satisfied the substantial contribution requirement for an administrative claim.

---

[70] *Monzon*, 910 F.3d at 101.

## **CONCLUSION**

Based on the foregoing, the Court entered an Order Granting the Motion to Expunge on February 24, 2020.[71]

Dated: March 11, 2020

_____
Honorable Stacey L. Meisel
United States Bankruptcy Judge

---

[71] Docket No. 1214.